## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QUINDA POLLARD<br>MARY BULLEN<br>NICOLE KORNEGAY<br>SHARON TROTMAN<br>MAUDY ABDUL<br>TONYA SHAW<br>BEVERLY WILLIAMS<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF NEW YORK<br><br>    Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

## **COMPLAINT**

Plaintiffs, by and through their counsel, the law firms of McGillivary Steele Elkin LLP and Spivak Lipton LLP, for their Complaint against the City of New York ("City") state as follows:

### INTRODUCTION

1. Plaintiffs are current and former employees of the Defendant, City of New York, holding the title of Principal Administrative Associate Level I and Health Care Program Planner Analyst at the New York City Department of Health and Mental Hygiene ("DOHMH"). Plaintiffs bring this action against Defendant for back pay, liquidated damages, attorneys' fees and costs, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331, to remedy the Defendant's willful and unlawful violations of federal law complained of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation in accordance with the FLSA. The

Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime work before their paid shifts, during their unpaid meal periods, and after their paid shifts.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

5. All Plaintiffs listed in Exhibit A (collectively referred to herein as "Plaintiffs") have given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). In addition to representative Plaintiffs Quinda Pollard, Mary Bullen, Nicole Kornegay, and Sharon Trotman, additional opt-in Plaintiffs have submitted written consent to be Party-Plaintiffs in this action. The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

6. Each of the Plaintiffs in this action, while employed by Defendant, has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

7. Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency and "employer" within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, 10007.

**FACTS**

8. Plaintiffs are, and have been at all times material, employed by Defendant in the title of Principal Administrative Associate Level I (hereinafter "PAA I") or Health Care Program Planner Analyst (hereinafter "HCPPA") at the DOHMH.

9. For example, at all times material, Plaintiffs Pollard, Bullen and Trotman have worked for Defendant with the title of PAA I and performed the job functions of a Scheduler. Plaintiff Nicole Kornegay has worked for Defendant with the title of PAA I and performed the job functions of a non-supervisory Office Manager. Plaintiff Abdul has worked for Defendant in a position with the title of HCPPA, however, she performs the job functions of a Scheduler similar to the PAA Is and is subject to the same policies and/or practices that violate the FLSA. At all relevant times, Plaintiffs Pollard, Bullen, Kornegay, and Abdul have been assigned to the Early Intervention Program located at 16 Court Square, 2nd Floor, Brooklyn, NY 11241. At all relevant times, Plaintiff Trotman has been assigned to the Early Intervention Program located at 42 Broadway, New York, NY 10004.

10. Within the last three years and continuing to date, while working in the position of PAA I and/or HCPPA on behalf of Defendant, the job duties of Plaintiffs Pollard, Bullen and Trotman and all others similarly situated in the role of Scheduler include but are not limited to: scheduling families for initial appointments with Early Intervention Official Designees (EIODs) in order to access support services for children with developmental delays, maintaining office calendars for EIODs, reviewing multidisciplinary evaluations and confirming eligibility for services, scheduling families for necessary follow up meetings, reviewing and processing reports, communicating with service coordinator agencies and providers via phone and email, and managing a high-volume work queue with associated deadlines. Pursuant to DOHMH's policies, a case may not remain in

the PAA I/HCPPA's queue for more than 24 hours before the PAA I/HCPPA schedules it for an initial appointment, and the PAA I/HCPPA must process all multidisciplinary evaluations within 48 hours. As a result, Plaintiffs process a high volume of cases on tight deadlines to comply with these requirements and to serve the large number of families in need of early intervention services.

11. Within the last three years and continuing to date, while working in the position of PAA I on behalf of Defendant, the job duties of Plaintiff Kornegay and all others similarly situated in the role of non-supervisory Office Manager include but are not limited to: scheduling interviews and meetings for DOHMH staff, reviewing entry forms and calendars, processing and recording entries, exits and additional paperwork within the system pertaining to the children accessing services with DOHMH, reporting information to the Early Intervention Program, communicating with EIODs and providers, and assisting with office inventory and supplies.

12. While working as a PAA I and/or HCPPA at DOHMH, Plaintiffs and all others similarly situated regularly work at least 40 hours a week. They are scheduled to work five days a week, for shifts of eight hours each day, with one hour automatically deducted from each shift as an uncompensated meal period. However, Plaintiffs routinely work hours in addition to their regularly scheduled shifts such that they work over 40 hours in a week, but Defendant fails to compensate Plaintiffs and all others similarly situated for all hours worked in excess of 40 in a workweek at a rate of one and one-half times their regular rate of pay. Specifically, Defendant fails to compensate Plaintiffs and all others similarly situated for hours worked before the start of their scheduled shifts, after the end of their scheduled shifts, and during their unpaid, 60-minute meal periods.

13. Defendant captures the work hours of Plaintiffs, including time spent working before their scheduled shift begins and/or after the end of their scheduled shifts, on the Defendant's

4

electronic timekeeping system, "CityTime," which is maintained and accessible at Plaintiffs' work location. Time which is recorded but worked outside Plaintiffs' scheduled shifts is categorized as "noncompensable hours" in the CityTime system, and Plaintiffs are not paid for that time even though Defendant has suffered or permitted them to perform uncompensated overtime work during that time. In addition, CityTime automatically deducts one hour each day for Plaintiffs' uncompensated meal period regardless of whether the Plaintiffs work through all or part of their uncompensated meal period. Defendant also categorizes this unpaid, meal period hour as "noncompensable" in the CityTime system.

### *Defendant's Fair Labor Standards Act Violations are Willful*

14. CityTime tracks all of the Plaintiffs' work time on a minute-by-minute basis including their pre-shift and post-shift work time. However, Defendant does not pay Plaintiffs on a minute-by-minute basis. This is because when the City of New York programmed and implemented CityTime, it chose to utilize a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-punch" system (i.e., one that pays employees for all the time between punch in and punch out). Defendant only pays for overtime work that has been pre-approved, regardless of whether Plaintiffs' supervisors and/or managers are aware of overtime being worked. As such, although all minutes of Plaintiffs' pre-shift and post-shift work time is captured in CityTime and reviewed on a weekly basis by Plaintiffs' supervisors, Plaintiffs are nevertheless only paid for their scheduled shift hours unless they have received prior approval to work overtime.

15. Upon information and belief, Defendant failed to conduct an audit or otherwise investigate any of the work minutes captured by CityTime as "noncompensable" time, including but not limited to what Plaintiffs are doing during their recorded pre-shift or post-shift time.

16. Plaintiffs' timekeeping and payroll data is in Defendant's exclusive possession and is not readily available to Plaintiffs. Plaintiffs' CityTime records and payroll data are not readily available to Plaintiffs and other PAA Is or HCPPAs because they are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and requires a separate search for each pay period." *Murray, et al. v. City of New York*, No. 1:16-cv-08072-PKC, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

17. Defendant failed to seek advice from the U.S. Department of Labor regarding whether its pay policies and practices comply with the FLSA.

18. The Defendant is well aware of its obligation to pay employees for overtime work that is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not pre-approved by Plaintiffs' superiors. In fact, the former New York City Corporation Counsel has admitted, under oath, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, Case No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70. However, at all times relevant, Defendant has failed and continues to fail to compensate Plaintiffs and those similarly situated for overtime work that is performed with their supervisors' knowledge and is recorded in the CityTime system.

19. The City has been held liable for failing to pay for recorded pre-shift and post-shift work on multiple occasions, yet has made no changes to the manner in which it records or compensates Plaintiffs for their overtime work. *See, e.g., Perry v. City of N.Y.*, 78 F.4th 502 (2d Cir. 2023) (affirming jury verdict in favor of plaintiffs in the amount of $17.78 million for FLSA violations, including failing to pay for pre-shift and post-shift time recorded on CityTime and a finding of willfulness); *Foster v. City of New York*, 2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sept.

30, 2017) (granting summary judgment to plaintiffs on FLSA claims that they worked uncompensated overtime about which their managers were aware, despite required use of the CityTime system); *De La Cruz v. City of New York*, 2017 U.S. Dist. LEXIS 227758 (S.D.N.Y. Sept. 30, 2017) (same); *Worley v. City of N.Y. and NYPD*, 2020 WL 730326 (S.D.N.Y. Feb. 12, 2020) (granting summary judgment to plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware). *See also Perez v. City of New York*, 2017 U.S. Dist. LEXIS 159473 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that plaintiffs failed to "report" overtime on the CityTime system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours).

20. Defendant has not disciplined any PAA I or HCPPA employees for performing unpaid pre-shift, post-shift, or meal period overtime work.

### *Uncompensated Work Performed by Plaintiffs and All Others Similarly Situated*

21. While working as PAA Is and/or HCPPAs at DOHMH, Plaintiffs and all others similarly situated routinely work over 40 hours a week. Plaintiffs are scheduled for five shifts of eight hours in length each week, with one hour automatically deducted from each shift as an uncompensated meal period. However, because Plaintiffs regularly work additional hours before the start of their scheduled shifts, after the end of their scheduled shifts, and during their unpaid meal periods, Plaintiffs and all others similarly situated regularly work in excess of 40 hours per workweek. Plaintiffs do not receive compensation for those additional hours because the City only pays for overtime work that has been "pre-approved" in advance of when it was worked.

22. Plaintiffs and all others similarly situated regularly begin work before the scheduled start time of their shifts and stop working after the end of their scheduled shifts. Such pre-shift and

post-shift work includes, but is not limited to, the tasks listed in Paragraphs 10 and 11, which must be completed within tight deadlines set by the City. Plaintiffs are not compensated for this daily pre-shift and/or post-shift work time.

23. Plaintiffs and all others similarly situated perform work during some or all of their 60-minute unpaid meal periods performing their regular job duties (i.e., the tasks listed in Paragraphs 10 and 11), but are not compensated for this meal period work time.

24. Plaintiff Pollard routinely works over 40 hours in a workweek. When Plaintiff Pollard works over 40 hours, Defendant fails to compensate her for all of her work time, including but not limited to time spent performing tasks enumerated in Paragraph 10 before the official start of her scheduled shift, after the end of her scheduled shift, and during her unpaid 60-minute meal period. Specifically, Plaintiff Pollard routinely arrives at work approximately 10-20 minutes before the start of her scheduled shift and begins performing the work tasks enumerated in Paragraph 10. In addition, on these occasions, Plaintiff Pollard routinely works for at least 30 minutes, and as many as 4 hours, after the end of her scheduled shift and she also works through her meal period approximately four to five times per week, performing the duties listed in Paragraph 10 such as continuing to manage her work queue, responding to emails from service coordinator agencies, and scheduling meetings to meet the deadlines set forth by the City. Thus, Plaintiff Pollard is regularly not compensated for at least approximately 7 hours and 45 minutes of work beyond her scheduled shift per week.

25. For example, during the week of January 4 through January 9, 2021, Plaintiff Pollard worked for approximately one hour before her scheduled shifts, approximately 3 hours and 15 minutes after her scheduled shifts, and for approximately 1 hour during four unpaid meal periods, all without compensation. Plaintiff Pollard therefore worked at least approximately 3 hours and 15

8

minutes of unpaid overtime performing the work tasks and duties enumerated in Paragraphs 10 and 24, but was not compensated for that time.

26. Plaintiff Bullen routinely works over 40 hours in a workweek. When Plaintiff Bullen works over 40 hours, Defendant fails to compensate her for all of her work time, including but not limited to time spent performing tasks enumerated in Paragraph 10 after the end of her scheduled shift, and during her unpaid 60-minute meal period. Specifically, Plaintiff Bullen routinely worked for at least 1 hour, and as many as 4 hours, after the end of her scheduled shift and worked through her meal period approximately four to five times per week, performing the duties listed in Paragraph 10 such as continuing to manage her work queue, responding to emails from service coordinator agencies, and scheduling meetings within the deadlines set forth by the City. Thus, Plaintiff Bullen is regularly not compensated for at least approximately 9 hours of work beyond her scheduled shift per week.

27. For example, during the week of February 27 through March 3, 2023, Plaintiff Bullen worked for approximately 12 hours after her scheduled shifts, and for approximately 1 hour during four unpaid meal periods, all without compensation. Plaintiff Bullen therefore worked at least approximately 11 hours of unpaid overtime performing the work tasks and duties enumerated in Paragraphs 10 and 26, but was not compensated for that time.

28. Plaintiff Kornegay routinely works over 40 hours in a workweek. When Plaintiff Kornegay works over 40 hours, Defendant fails to compensate her for all of her work time, including but not limited to time spent performing the tasks enumerated in Paragraphs 11 before the official start of her scheduled shift, and during her unpaid 60-minute meal period. Specifically, Plaintiff Kornegay routinely arrives approximately 30 minutes to one hour before the start of her scheduled shift and begins performing work tasks enumerated in Paragraph 11. In addition, on

these occasions, Plaintiff Kornegay routinely works through her meal period approximately five times per week, performing the duties listed in Paragraph 11 such as processing and recording entries, exits and additional paperwork, and responding to phone calls and emails. Thus, Plaintiff Kornegay is regularly not compensated for at least approximately 7 hours and thirty minutes of work beyond her scheduled shift per week.

29. For example, during the week of August 29, 2022, through September 2, 2022, Plaintiff Kornegay worked for approximately 3 hours before her scheduled shifts, and for approximately 1 hour during five unpaid meal periods, all without compensation. Plaintiff Kornegay therefore worked at least approximately 3 hours of unpaid overtime performing the work tasks and duties enumerated in Paragraphs 11 and 28, but was not compensated for that time.

30. Plaintiff Trotman routinely works over 40 hours in a workweek. When Plaintiff Trotman works over 40 hours, Defendant fails to compensate her for all of her work time, including but not limited to time spent performing tasks enumerated in Paragraph 10 after the end of her scheduled shift, and during her unpaid 60-minute meal period. Specifically, Plaintiff Trotman routinely worked for at least 30 minutes, and as many as 2 hours and thirty minutes, after the end of her scheduled shift and worked through her meal period approximately four to five times per week, performing the duties listed in Paragraph 10 such as continuing to manage her work queue, responding to emails from service coordinator agencies, and scheduling meetings within the deadlines set forth by the City. Thus, Plaintiff Trotman is regularly not compensated for at least approximately 6 hours of work beyond her scheduled shift per week.

31. For example, during the week of August 15 through August 19, 2022, Plaintiff Trotman worked for approximately 6 hours and thirty minutes after her scheduled shifts, and for approximately 1 hour during four unpaid meal periods, all without compensation. Plaintiff

Trotman therefore worked at least approximately 5 hours and thirty minutes of unpaid overtime performing the work tasks and duties enumerated in Paragraphs 10 and 30, but was not compensated for that time.

32. All PAA Is and HCPPAs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 because Defendant fails to compensate PAA Is and HCPPAs for pre-shift, post-shift, and meal period work. The amount of pre-shift and post-shift overtime work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system and through other work and pay records.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

33. Plaintiffs hereby incorporate by reference Paragraphs 1 through 32 in their entirety and restate them herein.

34. At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed work activities, including but not limited to when they are performing tasks enumerated in Paragraphs 10 and 11, without compensation before the start of their shifts and after the end of their scheduled shifts, all of which is recorded on Defendant's timekeeping system. Plaintiffs and all others similarly situated also have performed work without compensation during their unpaid meal periods. This pre-shift, post-shift, and meal period work has caused Plaintiffs and all others similarly situated to work in excess of 40 hours in a given week without proper overtime compensation. Accordingly, as a result of the pay practices described herein, Defendant has failed

to provide Plaintiffs and all others similarly situated with the rights and protections provided under Section 7(a) of the FLSA, 29 U.S.C. § 207(a).

35. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts, after the end of their scheduled shifts, and during their uncompensated meal periods.

36. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody and control of the Defendant and its public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them, but, from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

37. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay overtime compensation as alleged herein.

38. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a)  Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b)  Award Plaintiffs and those similarly situated monetary liquidated damages equal to their unpaid compensation;

(c)  Award Plaintiffs and those similarly situated interest on their unpaid compensation;

(d)  Award Plaintiffs and those similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e)  Grant such other relief as may be just and proper.

DATE: December 8, 2023                    Respectfully submitted,

/s/ *Hope Pordy*
Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON LLP
1040 Avenue of the Americas
20th Floor New York, NY 10018
Phone: (212) 765-2100
hpordy@spivaklipton.com


/s/ *Gregory K. McGillivary*
Gregory K. McGillivary
Sarah M. Block
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
gkm@mselaborlaw.com
smb@mselaborlaw.com

*Counsel for Plaintiffs*