

Sara L. Faulman
slf@mselaborlaw.com

June 13, 2024

**VIA ECF**
Honorable Dale E. Ho
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007

      Re:    *Pollard, et al. v. City of New York*, Case No. 23-CV-10722

Dear Judge Ho:

      Plaintiffs respectfully submit this letter on behalf of all Parties regarding the proposed Settlement Agreement ("Agreement" or "Settlement") between Plaintiffs and Defendant, the City of New York ("City") ("Defendant"), in the above-referenced case brought under the Fair Labor Standards Act ("FLSA"). For the reasons set forth below, the Settlement is a fair and reasonable resolution of a *bona fide* dispute and should be approved. The signed Settlement Agreement (Exhibit 1), and a Proposed Order (Exhibit 2) are attached, along with supporting declarations from Plaintiffs' Counsel, Sara Faulman (Exhibit 3) and Hope Pordy (Exhibit 4). Pursuant to Paragraph 8.1 of the Agreement, should the Court deem a settlement approval conference necessary, the Parties request that a telephonic conference be set at a time convenient to the Court.[1]

      Plaintiffs – seven individuals employed or formerly employed by the Defendant as Principal Administrative Associate Level Is ("PAA Is") and Health Care Program Planner Analysts ("Analysts") – have been fully informed of the terms of the Settlement and have been provided with an opportunity to review the Settlement Agreement. ***There have been no objections to the Settlement.*** The Parties now submit the Settlement Agreement for the Court's consideration pursuant to *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015), and *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020).

      **I.**      **Claims Asserted and Procedural History**

      This case was filed on December 8, 2023. Dkt. 1. Specifically, the case involves the following claims:

      1) Defendant failed to pay overtime for work performed before and/or after Plaintiffs' scheduled shifts ("Pre- and Post-Shift Overtime Claim"); and

---

[1] Should the Court schedule a conference, Plaintiffs' Counsel will notify Plaintiffs of the date and time, as well as how to access the telephone conference line.

2) Defendant failed to pay for work performed during unpaid meal periods ("Meal Period Claim").

Plaintiffs also allege that Defendant's conduct lacked good faith and reasonableness, thus entitling Plaintiffs to liquidated damages in an amount equal to their backpay, and that Defendant willfully violated the law, thereby extending the statute of limitations from two to three years under 29 U.S.C. § 255(a).

On January 5, 2024, the District Court Judge referred this case to mediation to provide an opportunity for the Parties to settle the case in its earlier stages. Dkt. 12. Prior to the mediation, the Parties participated in initial discovery to facilitate settlement, with Defendant providing detailed payroll data and CityTime timekeeping data for a three-year period, as well as some additional documents regarding the Plaintiffs' job duties and their employment files. After an initial exchange of settlement demands, the Parties participated in a mediation session on May 8, 2024. Although the parties did not reach a settlement at the May 8 mediation, they did ultimately reach a resolution on May 17, 2024. Dkt. 21.

## II. Terms of the Proposed Settlement Agreement

The Agreement provides that Defendant will pay **$79,245.00** ("Settlement Amount") to resolve the lawsuit. The Settlement Amount will be paid as follows: (1) $17,234.00 in backpay (the "Backpay Amount") by checks made payable to each Plaintiff (via direct deposit for current employees or by check delivered to Plaintiffs' Counsel for separated employees) in the amount of each Plaintiff's share as determined by Plaintiffs' Counsel; and (2) one check in the amount of $62,011.00 constituting liquidated damages, attorneys' fees, and litigation expenses payable to Plaintiffs' Counsel for distribution to Plaintiffs ("Lump Sum Amount").

The Lump Sum Amount will be distributed as follows: (1) $15,511.00 in liquidated damages ("Liquidated Damages"); (2) $41,992.00 in attorneys' fees to Plaintiffs' Counsel; and (3) $4,508.00 in expenses to Plaintiffs' Counsel.

The Backpay Amount and Liquidated Damages portion of the Settlement Amount were calculated by Plaintiffs' Counsel and will be divided among the Plaintiffs as follows: For each week that a Plaintiff was employed as a PAA I or Analyst during the recovery period, the Plaintiff received one point.[2]

---

[2] The methodology of using weeks of employment during the relevant statute of limitations period to determine the Plaintiffs' amounts is the methodology used in other FLSA cases involving complicated off-the-clock claims and a variety of different claims wherein the risks and valuations of each claim and the amounts of work time the Plaintiffs may win are difficult to separately quantify for each Plaintiff and for each claim. *E.g.*, *Nell v. City of New York*, Case No. 1:19-cv-6702-LGS (S.D.N.Y.), Dkt. 126 (Nov. 16, 2021) (approving settlement agreement for DOC MVOs using same distribution method); *Disla v. City of New York,* Case No. 1:22-cv-6693-SN (S.D.N.Y.), Dkt. 49 (May 22, 2023); *Casis v. City of New York*, Case No. 1:22-cv-1926-SN (S.D.N.Y.), Dkt. 54 (Jan. 20, 2023); *Feiner v. City of New York*, 1:16-cv-08675-PGG (S.D.N.Y.), Dkt. 86 (January 16, 2023); *Williams v. City of New York*, Case No. 16-cv- 08671 (S.D.N.Y.), Dkt.

      The recovery period for each Plaintiff is three years prior to the date a Plaintiff's consent-to-sue form was filed in Court up to May 3, 2024, or their last day of employment, whichever is earlier. The points were then divided into $32,745.00 ("Gross Damages Amount") to determine the dollar value of a point. The Gross Damages Amount is the Backpay Amount and Liquidated Damages after attorneys' fees and litigation expenses are deducted. Exhibit A to the Settlement lists Plaintiffs' distribution amounts after attorneys' fees and expenses are deducted.

      In consideration and exchange for this Settlement, the Plaintiffs agree to release the Defendant for all wage and hour claims through May 3, 2024.

      Each Plaintiff has been informed, in writing, of the Settlement Amount, the amount agreed to by the City for fees and expenses, the methodology for assigning points, the value of a point, and the number of points calculated for them using the Defendant's payroll data. Each Plaintiff has been given an opportunity to dispute the number of points assigned and to review the point assignments and settlement awards of all other Plaintiffs. There have been no disputes or objections. The reaction of the Plaintiffs has been nothing but positive.

### III.    Applicable Factors for Approving FLSA Settlements

      A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599-600 (2d Cir. 2020); *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015). "As a result, district courts in this Circuit routinely review FLSA settlements for fairness before approving any stipulated dismissal." *Id.* "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted).

---

101 Nov. 7, 2022); *De La Cruz v. City of New York*, Case No. 14-CV-9220-PGG, (S.D.N.Y.). Dkt. 227 (July 1, 2022); *Foster*, Case 14-cv-04142-PGG-RWL (S.D.N.Y.), Dkt. 242 (Dec. 28, 2021)*, Matias v. City of New York*, Case No. 21-cv-1736-GHW (S.D.N.Y.), Dkt. 39 (October 29, 2021) (approving settlement agreement for School Safety Agent Level 3 title at NYPD using same distribution methodology); *Campbell v. City of New York*, Case No. 16-cv-8719 (AJN) (SDA), (S.D.N.Y.), Dkt. 186 (Sept. 17, 2021) (approving settlement agreement for DHS security officers using same distribution methodology); *Murray v. City of New York*, Case No. 1:16-cv-08072 (PKC) (S.D.N.Y.) Dkt. 228 (Apr. 23, 2021) (approving settlement agreement for various administrative titles at DHS using same distribution methodology); *Lawtone-Bowles et al., v. City of New York*, Case No. 1:16-cv-04240 (AJN) (OTW) (S.D.N.Y.), Dkt. 157 (Apr. 8, 2021) (approving settlement agreement for DHS motor vehicle operators using same distribution methodology); *Worley et al., v. City of New York*, Case No. 1:17-cv-04337 (LGS), Dkt. 230 (S.D.N.Y.), Dkt. 230 (Jun. 8, 2020) (approving settlement agreement for NYPD school safety agents using same distribution methodology); *Perry v. City of New York*, Case No. 1:13-cv-01015 (VSB) (S.D.N.Y. Feb. 13, 2020) (approving settlement agreement for FDNY Fire Inspectors using same distribution methodology).

June 13, 2024
Page 4

Courts evaluating whether FLSA settlements are reasonable consider the following factors:

(1) the plaintiffs' range of possible recovery;
(2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
(3) the seriousness of the litigation risks faced by the parties;
(4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
(5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 336; *Fisher*, 948 F.3d at 599-600 ("District courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky*…."). Importantly, under the Second Circuit's *Fisher* decision, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Fisher,* 948 F.3d at 606.

### A. Application of the *Wolinsky* Factors to the Settlement

As discussed below, the proposed Settlement is fair and reasonable.

#### 1. Plaintiffs' Possible Range of Recovery

The Backpay Amount and Liquidated Damages agreed to by the Defendant to resolve this case, before deducting attorneys' fees and expenses, is $32,745.00 ("Gross Damages Amount"). Ex. 3 ("Faulman Decl."), ¶ 11. The Defendant also agreed to pay hourly attorneys' fees in the amount of $41,992.00 and expenses in the amount of $4,508.00, for a total of $46,500.00 in fees and expenses. *Id.* ¶ 12. These amounts were added to the $32,745.00 Gross Damages Amount to arrive at the total Settlement Amount of $79,245.00. *Id.*

The Gross Damages Amount is based on damages calculations prepared by Plaintiffs' expert damages witness, Dr. Louis Lanier, which were reviewed by Defendant's expert witness, Dr. Christopher Erath, as part of the Parties' arm's-length negotiations. Plaintiffs believe the Gross Damages Amount is equal to Plaintiffs' total claimed damages using a full three-year recovery period and 90% of the potential amount of liquidated damages that would be awarded if Plaintiffs were successful in demonstrating to a jury that (1) the total amount of pre-shift and post-shift uncompensated time recorded by CityTime was compensable worktime; (2) the Plaintiffs worked through three one-hour meal periods per week; and (3) Defendant committed a willful violation.

The three-year statute of limitations on all claims is notable, because to achieve this outcome in this matter, Plaintiffs would have been required to prove that Defendant willfully violated the law; otherwise, a two-year statute of limitations would apply. 29 U.S.C. § 255 (a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

A discussion of the Gross Damages Amount and the associated litigation risks with respect to each claim is set forth below.

June 13, 2024
Page 5

*Uncompensated Pre- and Post-Shift Overtime Claim.* The settlement damages calculations associated with the Pre- and Post-Shift Overtime Claim are calculated based on the time recorded in the CityTime timekeeping system. The City agreed to pay the full amount of those recorded minutes over forty in each workweek, plus an amount equal to approximately 90% of the backpay as liquidated damages on the Pre- and Post-Shift Overtime Claim.

*Meal Period Claim.* The Settlement represents 100% of the total claimed backpay damages on the Meal Period Claim over a three-year recovery period, plus an amount equal to 90% of the backpay as liquidated damages. The full backpay calculation reflects 180 minutes per week (i.e., working through approximately 3 meal periods per week). Plaintiffs faced significant risk on this claim if it were pursued through discovery, at summary judgment, and/or at trial because Plaintiffs carry the burden of proving the amount of time they worked through their unpaid meal periods each workweek and that the City knew or should have known about this meal period work.

Moreover, for the Pre- and Post-Shift Overtime Claim, even if Plaintiffs were successful in meeting their burden at summary judgment or at trial, it is possible that a jury could have awarded fewer minutes per day of pre- or post-shift overtime. Similarly, for the Meal Period Claim, a jury could have found that the Plaintiffs work through less than three meal periods per week. Significantly, even if a jury ruled in Plaintiffs' favor on these two claims, a jury may have found that these violations were not willful, resulting in a two-year, rather than three-year recovery period, and it is possible that the Court may not have awarded liquidated damages.

The Settlement Agreement provides for a non-reversionary **$32,745.00** Net Settlement Fund for the Plaintiffs. The Gross Damages Amount, which is the amount to be distributed to the Plaintiffs (excluding the fees and expenses that were separately negotiated), is equal to **95%** of Plaintiffs' total claimed damages using a full three-year recovery period and a full award of liquidated damages. Faulman Decl., ¶ 11. The average settlement amount to be paid to the seven individual Plaintiffs is **$4,677.85**. *Id.*

In light of this range of recovery as compared to the amounts provided for under the Settlement Agreement, this Settlement represents an excellent result for the Plaintiffs on *all* claims. This is especially significant considering the early resolution of this case, and the Parties' ability to rely on the Defendant's timekeeping and payroll records and avoid protracted discovery, to establish damages. This early resolution also allowed the Parties to keep attorneys' fees and expense at a minimum.

2. **Avoiding Anticipated Burdens and Expenses**

Litigating FLSA claims and damages at trial would be a fact-intensive process demanding additional costly litigation by both Parties. Without this Settlement, both Parties would need to spend significant time and resources engaging in full merits and expert discovery, including exchanging written discovery, meeting with and preparing each of the individual Plaintiffs for depositions and trial testimony. Thereafter, the Parties would be required to prepare for trial, including drafting motions for summary judgment, preparing trial exhibits, preparing motions *in limine*, preparing pre-trial briefing, drafting jury instructions, *voir dire*, and a verdict form,

June 13, 2024
Page 6

preparing opening statements, presenting the case to the jury, preparing summation, presenting the issue of liquidated damages to the Court for a decision, likely post-trial motions practice, and possible appeal. In short, absent Settlement, the anticipated burdens and expenses on both Parties were significant.

### 3. Seriousness of Litigation Risks

As noted above, there was risk to both sides on all claims, with the most significant risk to the Parties in the possible ranges of recovery associated with the amount of uncompensated work performed on Plaintiffs' claims, as well as the issues of whether the Defendant's violations on all claims were willful and lacked good faith or reasonableness. Given the uncertainty over the potential outcome, both Parties were motivated to settle this dispute early in the litigation.

### 4. Arm's-Length Bargaining

Both Parties engaged in good faith, arm's-length negotiation in reaching this Settlement. Plaintiffs' expert witness analyzed detailed payroll information and timekeeping records and shared those calculations and all underlying programing with Defendant. Defendant's expert reviewed and analyzed Plaintiffs' damages calculations, and these calculations were relied upon by the Parties to negotiate the Settlement Amount.

Ultimately, the Parties reached an agreement in principle after participating in a mediation session as part of the SDNY's mediation referral program and through subsequent settlement negotiations, and the settlement terms were approved by the Plaintiffs' Settlement Team. Thereafter the Parties negotiated and executed the Settlement Agreement capturing those terms. In addition, all Plaintiffs have been informed of the Settlement and its terms, and they have been informed of their opportunity, if they so choose, to object to the Settlement on an individual basis. In addition, they were informed of the Settlement distribution methodology and the point value. They had an opportunity to dispute the number of recovery period weeks assigned to them, to review the amounts and weeks allocated to each and every Plaintiff, and to read the Settlement Agreement. ***No Plaintiff has lodged any objection to the Settlement.***

### 5. Possibility of Fraud or Collusion

Given the Parties' arm's-length negotiating and the Parties' good faith participation in settlement discussions, there was no opportunity for fraud or collusion. The Parties represented their clients zealously and obtained what both Parties consider to be a fair and reasonable settlement of a *bona fide* dispute consistent with standards established in the Second Circuit for FLSA settlements.

## B. Attorneys' Fees and Costs

### 1. Under *Fisher* and *Wolinsky* Attorneys' Fees are Reviewed for Reasonableness

"Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be

June 13, 2024
Page 7

unwilling to take on the risk. Adequate compensation for attorneys who protect wage and hour rights further the remedial purpose of the FLSA…" *DeLeon v. Wells Fargo Bank. N.A.*, 2015 U.S. Dist. LEXIS 65261, at *5 (S.D.N.Y. May 7, 2015) (citing *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) for "commending the general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'")). *See Bozak v. FedEx Ground Package Sys.*, 2014 WL 3778211, at *16 (D. Conn. 2014) (Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel."); *Capsolas v. Pasta Resources Inc.*, 2012 WL 4760910, at *8 (S.D.N.Y. 2012) (fee request of one-third is "consistent with the norms of class litigation in this circuit").

"In an individual FLSA claim, where separate amounts are set forth for the payments of unpaid wages and payments for attorneys' fees, the Court has greater flexibility in exercising its discretion in determining the reasonableness of the attorneys' fees. In other words, there is a greater range of reasonableness for approving attorneys' fees in an individual action where the parties settled on the fee through negotiation." *Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08 CV 4377 (KAM)(CLP), 2010 U.S. Dist. LEXIS 60985, at *14-16 (E.D.N.Y. May 17, 2020). Here, Plaintiffs and Defendant negotiated attorneys' fees separately from the recovery amounts for the individual Plaintiffs. The negotiated attorneys' fees of $41,922 and $4,508 in costs is separate and distinct from the backpay and liquidated damages amounts allocated to the Plaintiffs under the Settlement Agreement.

Moreover, in *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 605 (2d. Cir. 2020), the Second Circuit clarified that there is no cap on the number of attorneys' fees to be recovered in an FLSA settlement and held that a district court abuses its discretion by rewriting and reallocating funds, including attorneys' fees, under a settlement agreement negotiated by the parties. The *Fisher* Court held that a "district court may not simply rewrite the terms of a settlement agreement because a 'settlement agreement is a contract that is interpreted according to general principles of contract law.'" *Id.* at 605. "If the 'terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself.'" *Id.* (quoting *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019)). Thus, "[w]hen presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." *Id.* at 606. The Court emphasized that "even though a district court has a duty to review an FLSA agreement for reasonableness to prevent any potential abuse, this does not grant the court authority to rewrite contractual provisions it finds objectionable." *Id.*

The measure of court approved attorneys' fees is, of course, "reasonableness." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 336 ("Where a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must also assess the reasonableness of the fee award."); *see also Camacho v. Ess-A-Bagel, Inc.*, 2014 U.S. Dist. LEXIS 171649, at *1 (S.D.N.Y. Dec. 11, 2014) ("District courts must evaluate whether a proposed FLSA settlement is 'fair and reasonable' and whether any concomitant award of attorneys' fees is reasonable."). The Parties have negotiated the fee amount in arms' length negotiations and determined that the fee amount is fair and reasonable.

### 2. The Degree of Success Obtained Demonstrates the Reasonableness of the Requested Fees

As the Second Circuit noted in *Fisher*, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Fisher*, 948 F.3d at 606-07 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) and (*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). In this case, the seven individual Plaintiffs will recover 95% of their total possible recovery in this matter for the maximum three-year period. Notably, given that the Plaintiffs would be required to establish liability at trial **and** prove Defendant acted willfully in violating the FLSA, the degree of success obtained is significant. Further the average settlement amount to the individual Plaintiffs is $4,677.85.

### 3. The Requested Fees are Reasonable in Light of Traditional Criteria

In determining a reasonable award of attorneys' fees, this Court may also consider the "traditional criteria" such as "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement and (6) public policy considerations. *Goldberger,* 208 F. 3d 43, 50 (2d Cir. 2000) (internal quotations omitted). An analysis of these criteria further supports the fee requested, in addition to Plaintiffs' individual contingency fee agreements with Plaintiffs' Counsel as described above.

#### 1. The Litigation was Complex

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 U.S. Dist. LEXIS 105596, 2014 WL 3778173 at *10 (S.D.N.Y. 2014). Here, given the presence of multiple claims, and the sophistication of the employer and their policies, this case did not represent a straightforward FLSA claim where a single employee seeks compensation for an easily defined amount of unpaid work. As a result, this litigation was somewhat complex, and Plaintiffs' Counsel's expertise greatly benefitted the Plaintiffs.

To start, the case involved a thorough investigation by Plaintiffs' Counsel to determine the extent of the violations. Faulman Decl., ¶ 7, Pordy Decl., ¶ 13. This investigation involved determining the specific claims at issue and the possible defenses the Defendant may have raised. To do this, Plaintiffs' Counsel interviewed Plaintiffs to understand the scope of their claims, and possible difficulties in presenting Plaintiffs' theory of liability, and possible defenses that Defendant may raise. Plaintiffs' Counsel did so both prior to filing the Complaint and again in preparation for the mediation.

After the case was referred to mediation, Plaintiffs' Counsel engaged an expert to analyze the Defendant's data and prepare settlement calculations and spearheaded settlement discussions on behalf of the Plaintiffs.

#### 2. The Time and Labor Required

June 13, 2024
Page 9

Significant time and labor was spent by Plaintiffs' Counsel prior to and in reaching the Settlement.[3] During the time spent litigating this lawsuit, Plaintiffs' Counsel have not been paid for any of the work that they have performed. This uncompensated work has been substantial and includes: 1) interviewing Plaintiffs and investigating claims; 2) researching the claims and possible defenses at issue in this matter; 3) preparing and filing the Complaint; 4) negotiating and engaging in initial discovery with the Defendant; 5) engaging an expert damages witness to prepare damages calculations by analyzing data produced by the Defendant; 6) preparing a settlement demand; 7) preparation for the mediation including preparing a mediation statement, participating in pre-mediation calls with the mediator and convening meetings with the Settlement Team to discuss settlement possibilities; 8) participating in the mediation; 9) engaging in extensive settlement discussions with Defense Counsel after the May 8 mediation; 10) negotiating the written terms of the Settlement Agreement; 11) notifying the seven Plaintiffs of the terms of the Settlement Agreement; 12) responding to questions regarding the Settlement; 13) preparing the settlement approval papers; and 14) preparing for administration of the Settlement. Faulman Decl., ¶ 7; Pordy Decl., ¶ 13.

### 3. The Fee in Relation to the Settlement Fund is Reasonable

The Plaintiffs have negotiated an overall settlement of $79,245.00, with $41,992.00 of that amount allocated for attorneys' fees. As the Second Circuit explained:

> Neither the text nor the purpose of the FLSA, however, supports imposing a proportionality limit on recoverable attorneys' fees. With respect to the statutory text, FLSA simply provides for a reasonable attorneys' fee to be paid by the defendant. 29 U.S.C. § 216(b). Nothing in this clause or the surrounding text supports the conclusion that a reasonable attorneys' fee must be a proportional fee.

*Fisher*, 948 F.3d at 603 (internal citations omitted). This is because a "proportionality rule would also be inconsistent with the remedial goals of the FLSA, which we have deemed a 'uniquely protective statute.'" *Id.* (citing *Cheeks*, 796 F.3d at 207).

Refusing to impose a proportionality requirement is consistent with the broad, remedial purposes of the FLSA:

> In 1983, Congress enacted the FLSA to guarantee workers a fair day's pay for a fair day's work and to guard against the evil of overwork as well as 'underpay.' By implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation is high. Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.

---

[3] A copy of Plaintiffs' Counsel's itemized billing reports were previously produced to the Defendant during mediation, and are attached as Exhibit A to the Faulman Declaration and Exhibit A to the Pordy Declaration.

June 13, 2024
Page 10

*Fisher*, 948 F.3d at 603 (internal quotations omitted).

Thus, "[i]n advancing Congress's goals under the FLSA to ensure a 'fair day's pay for a fair day's work,' the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation." *Id.* As the Second Circuit explained, "if plaintiffs' attorneys in these so-called 'run of the mill' FLSA actions are limited to a proportional fee of their client's recovery…no rational attorney would take on these cases unless she were doing so essentially pro bono. Without fee-shifting provisions providing compensation for counsel, employees like Fisher would be left with little legal recourse." *Id.*

Given this, the Second Circuit noted that:

> [W]e have long held – and we reiterate today – that a fee may not be reduced merely because the fee award would be disproportionate to the financial interest at stake in the litigation. The Supreme Court, this Court, and the district courts in this Circuit have long recognized the significance of attorneys' fees in civil rights cases and have not hesitated to award or approve disproportionate fees to counsel.

*Fisher*, 948 F.3d at 604-05.

In light of this, the requested fee – which, as explained below, represents less than Plaintiffs' Counsel's lodestar in this case – is reasonable because Plaintiffs' Counsel worked diligently to ensure recovery in this matter, which was far more complex than the "run of the mill" FLSA action described in *Fisher* given that it involved multiple claims including recorded and unrecorded unpaid overtime work. Plaintiffs' Counsel relied on their expertise to achieve results for the Plaintiffs. Counsel's work achieved the FLSA's purpose of guaranteeing these essential workers receive a fair day's pay for a fair day's work while guarding against the evils of overwork and underpayment. Finally, all Plaintiffs were informed of the attorneys' fees and expenses being sought by Plaintiffs' Counsel under the Settlement Agreement, and the Plaintiffs approved this amount.

### 4. The Risk of Litigation

Plaintiffs' Counsel undertook to prosecute this action without any guarantee of payment. Plaintiffs' Counsel was required to make a significant investment of time and resources without a guarantee of payment of any kind. Plaintiffs' claims would have been hard fought at summary judgment and trial by Defendant, and Defendant would have attempted to move for summary judgment, or, at trial, judgment as a matter of law to reduce or eliminate the damages owed to the Plaintiffs. Accordingly, Plaintiffs' Counsel faced significant obstacles of recovery for all Plaintiffs absent settlement.

### 5. The Quality of Representation

As described fully in the Declarations of Sara L. Faulman and Hope Pordy, Plaintiffs' Counsel are nationally recognized experts in the FLSA and wage and hour law, and their expertise benefited the Plaintiffs greatly. For example, Ms. Faulman and Ms. Pordy, and the attorneys at

their firms, have litigated hundreds of FLSA cases, including many in this Court. Faulman Decl., ¶¶ 13-18; Pordy Decl., ¶¶ 3-12. Plaintiffs benefited from this level of expertise.

### 6. Public Policy Weighs in Favor of Approving the Fee

As described above, the risk in this case was high and the work performed by Plaintiffs' Counsel significant. Plaintiffs' case was not quite "run of the mill," in that Plaintiffs presented claims based on multiple theories of liability, which involved extensive work to date and would involve additional extensive work to present at summary judgment and at trial. As such, Plaintiffs' Counsel vindicated the rights of those whose wage claims might otherwise be too small to justify the retention of able, legal counsel through the use of a collective proceeding. This advances the broad remedial public policy purposes of the FLSA.

### 7. A Lodestar Cross-Check Support the Fees Requested

A lodestar cross-check will further demonstrate that the Settlement is fair and reasonable based on approved fee awards within the Second Circuit. The lodestar multiplier is calculated by dividing the fee award by the lodestar (the reasonable hours billed multiplied by a reasonable hourly rate). *James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, 2019 WL 1915298 at *8 (S.D.N.Y. 2019). "Where the lodestar method is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Bryant v. Potbelly Sandwich Works, LLC*, 2019 WL 1915298, at *19 (S.D.N.Y. 2020).

"Courts in this Circuit regularly award lodestar multipliers from two to six times lodestar with some courts approving fee requests that are up to eight times the lodestar, and in some cases, even higher…" *Bryant*, 2020 U.S. Dist. LEXIS 21900, at *19-20.

Multiplying the hourly rates here by the hours of work performed through June 11, 2024, results in a lodestar of $94,302. Here, the Settlement provides for $41,992.00 in attorneys' fees. Thus, Plaintiffs' Counsel's lodestar is a ***negative multiplier.*** "Where a percentage fee is on the higher end of the range of reasonable fees but still represents a negative multiplier to the total lodestar, there is 'no real danger of overcompensation.'" *Id.* Moreover, the amount and reduction were negotiated with Defendant's counsel to reach an amount that was fair and reasonable.

As set forth above in Sections 3(1) and (2), Plaintiffs' Counsel zealously and skillfully litigated this collective action with no guarantee of success. Moreover, the Plaintiffs achieved an outstanding degree of success in recouping unpaid overtime wages. Under these circumstances, a lodestar cross check supports the attorneys' fees requested.

### b. Approval of Plaintiffs' Counsel's Expenses is Warranted

In this litigation, Plaintiffs' Counsel has agreed to accept $4,508.00 in out-of-pocket expenses to settle this matter. Faulman Decl. ¶ 9; Pordy Decl. ¶ 15. Plaintiffs' Counsel are entitled to reimbursement of litigation expenses from the settlement fund. 29 U.S.C § 216(b). Plaintiffs' Counsel's expenses, including filing fees, experts, copying, electronic research, and printing, were reasonable and necessary to counsel's representation of Plaintiffs. *McGreevy v. Life Alert*

*Emergency Response, Inc.*, 258 F. Supp. 3d 380, 390 (S.D.N.Y. 2017) (awarding expenses for experts, copying, electronic research, travel and printing, and other out-of-pocket expenses).

## II.   Conclusion

For all of the above reasons, the Parties believe that this Settlement is a favorable outcome and will appropriately compensate Plaintiffs for the overtime pay issues that are the subject matter of this litigation. Accordingly, the Parties respectfully submit that the Settlement, in its entirety, is fair and reasonable and should be approved by the Court.

Sincerely,

McGILLIVARY STEELE ELKIN LLP

Sara L. Faulman

cc:   All Counsel of Record (via ECF)